## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

DEBORAH RAYMOND,      )
                                )
     Plaintiff,           )
                                )      NO. 1:04-0065
v.                            )      JUDGE HAYNES
                                )
SATURN CORPORATION,     )
UNTIED AUTO WORKERS LOCAL,  )
1853, and INTERNATIONAL UNION,  )
UNITED AUTOMOBILE,        )
AEROSPACE AND AGRICULTURAL  )
IMPLEMENT WORKERS OF AMERICA, )
                                )
     Defendants.         )

### M E M O R A N D U M

Plaintiff Deborah Raymond, filed this action against the Defendants: Saturn

Corporation, United Auto Workers Local, 1853, International Union, United Automobile,

Aerospace and Agricultural Implement Workers of America,[1] asserting claims for violations of

the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") race and sex

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. ("THRA")

and 42 U.S.C. § 1981; violation of the Age  Discrimination in Employment Act, 29 U.S. 621 et

seq. ("ADEA") and the THRA; discrimination in violation of the Americans with Disabilities

Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Tennessee Handicap Act, Tenn. Code Ann. §

8-50-103 ("THA").  The parties have completed discovery.

Before the Court is the parties cross motions for summary judgment (Docket Entry Nos.

---

[1]Plaintiff dismissed her claims against the Union Defendants (Docket Entry No. 27) and
Saturn is the only remaining Defendant.

17 and 21). In her motion, Plaintiff contends: (1) that her proof satisfies the requirement of the ADA, Title VII and the ADEA; and (2) that the Defendant interfered with her FMLA leave.

In its motion for summary judgment, Saturn contends, in sum, that: (1) Plaintiff waived her FMLA and race discrimination claims in earlier proceedings in this action; (2) that Plaintiff's "reasonable accommodation" request violates the collective bargaining agreement by creating a vacancy and "bumping" a co-worker — that is "reasonable" as a matter of law; (3) that Plaintiff was not qualified for the position from which she was displaced and sought reassignment; and (4) Plaintiff was not treated differently than similarly situated male employees under the age of forty.

## A. FINDINGS OF FACT[2]

Saturn hired Raymond in 1989 as an operations technician at its Spring Hill, Tennessee manufacturing facility. Raymond was assigned as an installer of rocker panels in the hardware department. After the diagnosis of multiple sclerosis, Raymond was transferred, at her request to the Sealer I position in the paint department. Throughout her employment, Raymond has been a member of Local 1853 ("Local 1853") of the International Union of the Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW").

Raymond's operations technician job is governed by the Collective Bargaining

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are material factual disputes, thus, this section does not constitute a finding of facts under Fed.R.Civ.P. 56(d).

2

Agreement ('CBA") between Saturn and the UAW and Local 1853. As pertinent here, the "Guiding Principles," of the CBA describes the process for Saturn and Local 1853 to agree on accommodations for team members who were on a leave of absence for more than ninety days and who return with medical restrictions precluding them from performing the essential functions of their prior assigned job. (Docket Entry No. 32, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 4). The Member Placement Process ("MPP") in the Guiding Principles, defines the process to fill "primary" job openings that are created when a team member resigns, retires, or dies. (Docket Entry No. 26, Attachment No. 1, Michael David Herron Deposition at p. 127). The Return to Module provisions of the Guiding Principles governs "secondary" job openings that are created when a team member is "involuntarily displacement," or has medical restrictions precluding performance of essential functions of job or when a team member's leave exceeds ninety days. Id. Herron Deposition at 127.

Team members who are involuntarily displaced must complete a Return to Module form under the Return to Module Process within 15 days of displacement to be considered for placement to a job in the module. Id. at 128-30. Team members who complete Return to Module form are on "active status" to be recalled on a seniority basis. (Docket Entry No. 20, and Attachment No. 3, Raymond Deposition at pp. 213-14 Attachment No.1 thereto and Herron Deposition at pp. 130-33.

In early May 2003, Saturn granted Raymond's request for medical leave, as of May 20, 2003, and her last day of work in the Sealer I position was May 14, 2003. Id. Attachment 3 thereto, Raymond Deposition at pp. 57-58. At the time of her leave, Raymond knew that her job position was "protected" by the MPP and that she could be returned to that job only if she were

3

medically qualified and returned to work no later than August 18, 2003, ninety days after her leave began. Id. at 58. It is undisputed that Raymond did not return to work within that ninety-day period. Id. at 70. Raymond, however, took a two-week vacation to Puerto Rico during the ninety day leave period, id at 79, but did not return to work because she had not been medically cleared. Id. at pp. 47, 49.

After Raymond failed to return to work within ninety days of her leave consistent with the MPP, Saturn declared the Sealer I position vacant (Docket Entry No. 20, Attachment No. 2 thereto Martin Deposition at p. 83). Raymond asked Bud Verville, her UAW advisor how she could be returned to the Sealer I position and Verville told her to complete a "Return to Module" form immediately and that if she did so, it was likely that she would be selected to fill the now vacant Sealer I position. (Docket Entry No. 20, Attachment No. 5 thereto Verville Deposition at pp. 25-26). Raymond did not complete this form until September 3, 2003. Raymond deposition at pp. 66-67.

Based upon his seniority and active status, Gene Garner, a union employee was placed in the Sealer I position on August 26, 2003. Id. at Attachment No. 2, Martin Deposition at 84, 88. Garner is eleven months older than Raymond. Declaration of Sharon Eppler. Id. at Attachment No. 9 Eppler Decl at ¶ 3. Plaintiff was not selected to fill the Sealer I position because she did not have a timely completed Return to Module form when the position became vacant. Id. at Attachment No. 1, Herron Deposition at 152. Raymond is unaware of any person who has been allowed to return to their team and their module after the expiration of their ninety-day leave period, regardless of whether they have completed a Return to Module Form. Id. at Attachment No. 3, Raymond Deposition at p.70.

4

After Raymond completed a Return to Module form on September 3, 2003, Saturn offered her three different operations technician assignments: Finesse, Application, and Robotics. Id. at 87. Raymond chose the Finesse position that involves visually inspection of vehicles for scratches and blemishes. Id. at pp. 85-86. After working for two days, Raymond requested and was placed on disability leave because she was unable physically to perform that job. Id. at p. 99. Raymond remains on a disability leave of absence. Id. at p. 135.

## B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

5

disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact.

6

<u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991)(quoting <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989) (quoting <u>Celotex</u> and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting <u>Liberty Lobby</u>). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

<u>Street</u>, 886 F.2d at 1480 (cites omitted). See also<u>Hutt v. Gibson Fiber Glass Products</u>, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting <u>Liberty Lobby</u>)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

7

* * *

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

8

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.    Complex cases are not necessarily inappropriate for summary judgment.

    2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3.    The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

    4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the

9

party must prevail as a matter of law.'

6.    As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.    The trial court has more discretion than in the `old era' in evaluating the respondent's evidence.  The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.'  Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment:  (1) has the moving party "clearly and convincingly" established the absence of material facts?;  (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As a threshold matter, the Court reaffirms its earlier Order that Plaintiff's earlier decision not to pursue the FMLA claim, and Judge Higgins ruling is that there is not FMLA claim and

10

"that [claim] is out," (Docket Entry No. 14, September 17, 2004 conference at p. 7), bar any further consideration of that claim. See Docket Entry No. 40, citing Hester v. Int'l Union of Operating, 941 F2d 1574, 1578-79 (11th Cir. 1991). See also Curb v. MCA Records, 898 F. Supp. 586, 591 (1\VI.D. Tenn. 1995) (counsel's oral representations in litigation are binding judicial admissions).

As to Raymond's claim for her violation of the ADA and THA, Raymond's disability claim is based upon her multiple sclerosis and Saturn's failure to provide her requested accommodation i.e., a return to her Sealer I job position or other position that reasonably commodates her disability. As a matter of law, under THA, the employer is not required to provide an accommodation. See Roberson v. Cendent Travel Servs., 252 F. Supp. 2d 573, 583 (M.D. Tenn. 2002) (noting that the THA does not include a reasonable accommodation component). Thus, Raymond's THA claim fails as a matter of law.

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must demonstrate that (1) she was disabled; (2) she was otherwise qualified to perform the essential functions of the job; (3) she suffered an adverse employment action based solely upon her asserted disability; and, (4) she was replaced by or treated differently than a similarly situated, non-disabled person. Walsh v. United Parcel Serv., 201 F.3d 718, 724 (6th Cir. 2000); Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998).

The Court concludes that Plaintiff cannot meet her prima facie case because she cannot prove she was treated differently than any similarly-situated, non-disabled employee.

Saturn does not dispute that Plaintiff is "disabled," but asserts and that she was displaced from the Sealer I position when she was not released to return to work within ninety days of the

11

date her leave began. The CBA required Raymond to return to work within ninety days after her leave with the physician's release of her for work. Raymond did not do so. Raymond also did not complete timely a Return to Module form and the position had been declared vacant.

Although Raymond contended that her union representatives gave her the "wrong" date that her leave expired, her claims against the Union Defendants has been dismissed. Raymond concedes that she is unaware of any Saturn team member who returned to his/her team and module after the expiration of the ninety-day leave period. Under the undisputed material facts, Saturn did not treat Raymond differently than any other Saturn team member who had been absent for more than ninety days and failed to complete a Return to Module form.

In any event, Raymond has the burden to propose an accommodation and prove that her proposed "objectively reasonable." Cassidy v. Detroit Edison Co., 138 F.3d 629, 633-34 (6th Cir. 1998). Raymond's suggested accommodation — return to the Sealer I position — is not objectively reasonable method because to do so would "bump" Garner, who is rightfully entitled to the position under the CBA's Guiding Principles. An accommodation that offends a CBA is "unreasonable." US Airways, Inc. v. Barnett, 535 U.S. 391, 406 (2002); see also Cassidy, 138 F.3d at 634.

As to Raymond, the ADEA, Title VIII and the THRA claims of age and sex discrimination, Raymond fails to present sufficient proof of age or sex discrimination to support a judgment. Raymond has not shown disparate treatment, See Talley v. Bravo Pitino Rest., LTD, 61 F.3d 1241, 1248 (6th Cir. 1995). The evidence establishes a legitimate business reason for Saturn's selection of Garner. Thus, Raymond's disparate treatment claims based upon her age and sex fails. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Tennessee

12

courts have applied the same standards as those applied by federal courts in addressing cases brought pursuant to ADEA." <u>Watson v. Food Lion, Inc.</u>, 147 F. Supp. 2d 883, 884 (E.D. Tenn. 2000). Accordingly, Raymond's proof on her THRA claims likewise fail to support a judgment.

The Court concludes that the Plaintiff's motion for summary judgment be denied and Defendant's motion of summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the _17th_ day of August, 2005.

WILLIAM J. HAYNES, JR.
United States District Court

13